IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**WILLIAM R. JONES, et al.,**

    **Plaintiffs,**

v.                                                                                            Case No.:  3:13-cv-22811

**HEIL PROCESS EQUIPMENT, LLC,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Protective Order of Defendant, Heil Process Equipment, LLC ("Heil"). (ECF No. 11). Plaintiffs have filed a response in opposition to the motion, as has an interested non-party, Huntington Alloys ("HA"), (ECF Nos. 12, 14), and Defendant has filed a reply memorandum. (ECF No. 15). Consequently, the issues are fully briefed and are clear; thus, oral argument is unnecessary. For the reasons that follow, the Court **DENIES** Defendant's motion for protective order.

**I.   Relevant Background**

Plaintiffs claim that on March 26, 2012, William R. Jones was working at HA when he was struck in the head by a blade that broke off of an operating stack fan manufactured by Defendant Heil. Plaintiffs have brought a products liability action against Heil, alleging strict liability, negligent manufacturing, breach of express and

1

implied warranties, and reckless disregard or indifference to civil obligations arising out of the manufacturing, distribution, and ultimate sale of the fan to HA. Shortly after the incident, HA removed the stack fan (including the blade) and placed it in a secure onsite storage area. While the fan was still onsite, it was inspected by counsel for Plaintiffs, as well as by Heil's counsel and representative.

Thereafter, HA arranged for an independent inspection of the fan by S-E-A Limited, a forensic engineering and failure analysis facility, and had the fan transported to S-E-A's location in Columbus, Ohio. On December 19, 2012, Plaintiffs' counsel and their retained expert, Heil's counsel, HA's counsel, and two experts from S-E-A Limited jointly examined the fan. Since that time, the fan has remained at S-E-A's Columbus location, and HA has been paying all of the expenses associated with storing and preserving the fan.

Recently, Plaintiffs' counsel notified defense counsel that on March 26, 2014 Plaintiffs expert would perform another non-destructive examination of the fan at the S-E-A location, and defense counsel was invited to attend. Plaintiffs' counsel also advised that he had received permission from HA to transfer the fan to a secured location in Huntington, West Virginia after the examination. Counsel for Heil immediately objected to Plaintiffs taking possession of the fan, arguing that the fan should remain at S-E-A, where it was in the custody of an independent third-party and mutually available to both sides of the litigation. When the parties could not agree, Heil filed the instant motion.

## II.    Positions of the Parties

Heil seeks a protective order prohibiting Plaintiffs from removing the fan from the S-E-A Limited location, requiring the parties to share the storage costs at that facility, directing the parties to approve protocols prior to any further examination or

testing of the fan, and awarding reasonable fees and expenses for bringing the motion. In support of its motion, Heil argues that allowing Plaintiffs to assume custody of and transport the fan to Huntington will expose this critical piece of evidence to the risk of spoliation. Additionally, Plaintiffs will enjoy an unfair advantage in the litigation if they are permitted to unilaterally control key evidence in the case. According to Heil, it will lose its ability to "monitor" the fan, while at the same time, Plaintiffs will be given the opportunity to conduct "unlimited testing, and engage secretive chain of custody issues." Finally, Heil contends that moving the fan to Huntington is unfair because it geographically inconveniences Heil, which is located in northeast Ohio. However, if the fan remains in Columbus, it is equidistant from the parties. Heil adds that HA's concerns about paying the costs of storage and preservation can be easily cured by ordering Plaintiffs and Heil to share those costs.

In response, Plaintiffs argue that the fan belongs to HA; therefore, HA has the right to decide what to do with the fan. HA is not a party to this action and no longer wishes to bear the expense of preserving and storing the fan. Consequently, HA agrees that Plaintiffs may take possession of the fan with the understanding that Plaintiffs will store, protect, and preserve it. Plaintiffs should be permitted to carry out these obligations at a location of their choosing. Plaintiffs fully understand their responsibility to safeguard evidence and the penalties associated with spoliation. In addition, the parties have already agreed to provide notice before conducting destructive testing, and Heil will be permitted access to the fan. Therefore, Heil has no legitimate basis upon which to contest the agreement between HA and Plaintiffs. Finally, Plaintiffs stress that Heil can state no ground for a protective order under Rule 26(c) given that HA's decision to transfer custody of the fan to Plaintiffs is not discovery and certainly is not a

discovery abuse subject to a protective order.

Non-party HA essentially agrees with Plaintiffs that transferring possession of the fan is not discovery abuse properly addressed under Rule 26(c). HA emphasizes that it has provided the parties with ample opportunity to inspect the fan and has alone borne the expense of storing and preserving the fan since the accident more than two years ago. In addition, HA takes issue with Defendant's claim that transfer of the fan to Plaintiffs, by itself, constitutes spoliation of evidence.

### III. Discussion

Federal Rule of Civil Procedure 26(c)(1) allows a court, for good cause shown, to issue an order prohibiting discovery when necessary to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Typically, a motion under Rule 26(c) is filed in response to an outstanding discovery request propounded by an adverse party. Nonetheless, district courts have "substantial latitude to fashion protective orders," *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), and on occasion have entered precautionary orders for the purpose of preserving "physical evidence that might be needed for trial." *Adams v. Thyssenkrupp Safway, Inc.,* No. 2:09-cv-01342 JAM KJN, 2010 WL 2850769, *3 (E.D.Cal. July 20, 2010) (collecting cases). Before a protective order may issue, the moving party must establish through a "particular and specific demonstration of fact," that good cause supports the relief requested. Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2035 (1994). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Merit Industries, Inc. v. Feuer,* 201 F.R.D. 382, 384–385 (E.D.Pa. 2001).

In this case, Defendant simply does not meet its burden to show good cause for a protective order. Defendant's primary objection to HA's plan of transferring custody of the fan to Plaintiffs is that Defendant will not have joint custody. However, nothing in the discovery rules, or in any case law cited by Defendant, gives it that right. The fan was sold by Heil to HA and belongs to HA. If HA wants to give possession of the fan to Plaintiffs to store and preserve until the litigation is over, then HA has the right to do so. Contrary to Defendant's contention, HA's release of the fan to Plaintiffs for the express purpose of preserving it for use at trial is not spoliation of evidence.[1] Furthermore, the undersigned fails to see how possessing the fan gives Plaintiffs an unfair advantage in the litigation as both sides are entitled to inspect and test the fan. The parties have already agreed to notify each other before destructive testing is performed, and it goes without saying that any disagreements regarding destructive testing must be resolved before the testing is initiated.

Defendant's argument that movement of the fan will cause it geographic inconvenience is equally unpersuasive. Defendant sold the fan to a company located in Huntington, West Virginia. Therefore, it chose to do business in this geographic location. The accident occurred in Huntington; the Plaintiffs reside in this area; the witnesses are also in the Huntington area; the case is pending in Huntington; and any trial will take place here. Considering the ties to this city, storing physical evidence in Huntington does not appear particularly inconvenient.

---

[1] Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)). Here, HA intends to transfer custody of the fan to one of the litigants with the explicit understanding that the fan will be stored, protected, and preserved for use in the litigation.

Defendant's final two concerns, that there will be spoliation of evidence and "secretive chain of custody issues," are significant matters, but are not appropriately addressed by way of the Court entering a protective order dictating which party or non-party should act as custodian of the fan and which entity should store it. Clearly, the fan is a material piece of evidence in this civil action. Once Plaintiffs take possession of the fan, they are fully responsible to preserve it for use as evidence. If Plaintiffs fail to do so, they are subject to sanctions under Fed. R. Civ. P. 37, or through the court's inherent authority "to control the judicial process and litigation." *Goodman v. Praxair Servs. Inc.,* 632 F.Supp.2d 494, 505-06 (D.Md. 2009). These sanctions can include fees and costs, an adverse inference instruction, the striking of claims, even dismissal of the complaint. Moreover, as Plaintiffs point out, Defendant has not alleged or cited any instances of spoliation by Plaintiffs. Equally as important, Defendant has not articulated any particular reason why the Court should hesitate to allow Plaintiffs to possess, move, and store the fan. Defendant identifies no specific concerns with the manner or method by which Plaintiffs intend to transport the fan or with suitability of the Huntington storage facility at which Plaintiffs intend to house it. Instead, Defendant has stated only broad and speculative allegations of harm.

Regarding the concerns raised over chain of custody, Defendant similarly fails to put forth specific examples or demonstrations of fact to support its expressed trepidation. The "chain of custody" rule stems from the authentication requirements of Federal Rule of Evidence 901. *United States v. Turpin,* 65 F.3d 1207, 1213 (4th Cir. 1995). To authenticate an item of physical evidence, the item must "be preceded by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Ricco,* 52 F.3d 58, 61 (4th Cir. 1995) (quoting Fed.

6

R. Evid. 901). Chain of custody evidence is also used to establish that the item of physical evidence is in "substantially the same condition" as it was when first preserved and "has not been changed in important respects." *Gallego v. United States,* 276 F.2d 914, 917 (9th Cir. 1960) A break in the chain of custody does not necessarily render the physical evidence inadmissible, but does go to the weight of the evidence. *United States v. Harrington,* 923 F.2d 1371, 1374 (9th Cir. 1991) (citations omitted).

Defendant does not explain what "secret chain of custody" issues it foresees, and the Court simply will not speculate. Defendant hints that Plaintiffs will conduct "unlimited testing" of some unspecified sort, but provides no factual foundation for this intimation. Nothing in the record indicates that Defendant has been limited or impeded in its access to the fan, or in its ability to document the fan's appearance, condition, components, and operation. Defendant's counsel and representative have had at least two opportunities to inspect the fan already and certainly during these inspections have thoroughly documented the condition of the fan. Additionally, Defendant may request a final opportunity to inspect the fan before it is relocated at which time Defendant may photograph and record the examination of the fan to capture on film or digitally its current condition. Thus, Defendant has ample opportunity to record the state of the fan before the change of custody.

A review of the record also suggests that the parties have heretofore been open and cooperative about their inspections of the fan. Indeed, Plaintiffs have conducted, or offered to conduct, joint examinations on more than one occasion, and Defendant was invited to attend and participate in Plaintiffs' third planned examination in March. Certainly, if Plaintiffs wished to engage in secret or private inspections of the fan, they could have performed those inspections while the fan was onsite at HA or at the S-E-A

7

facility. In the two years since the accident, the fan has never been located at a facility under Defendant's control. Accordingly, Defendant had no more right or ability to "monitor" the fan at HA or S-E-A as it will have at a Huntington location. Consequently, the undersigned finds no basis to prohibit HA from transferring custody of the fan to Plaintiffs for storage and safekeeping.

Wherefore, for the forgoing reasons, the Court **DENIES** Defendant's Motion for a Protective Order.

The Clerk is directed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** April 17, 2014.

Cheryl A. Eifert
United States Magistrate Judge