IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM R. JONES,
and TIFFANY JONES,

        Plaintiffs,

v.                                CIVIL ACTION NO.   3:13-22811

HEIL PROCESS EQUIPMENT, LLC,

        Defendant/Third-Party Plaintiff,

v.

and

HUNTINGTON ALLOYS CORPORATION,

        Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant/Third-Party Plaintiff Heil Process Equipment, LLC's Brief Supporting a Stay/Stay Order of this action (ECF No. 186); Plaintiffs William R. and Tiffany Jones' Motion for Leave to Amend Complaint (ECF No. 150) and their Motion to Expedite Motion for Leave to Amend Complaint (ECF No. 155); and Third-Party Defendant Huntington Alloys Corporation's Motion for Summary Judgment (ECF No. 130) and various motions in limine filed by Huntington Alloys Corporation. ECF Nos. 171, 174, 176, & 178. For the following reasons, the Court **DENIES** the request for stay of this action; **GRANTS** Plaintiffs' Motion for Leave to Amend; **DENIES AS MOOT** the Motion to Expedite the Motion for Leave to Amend Complaint; **GRANTS** Huntington Alloys Corporation's Motion for Summary Judgment; and **DENIES AS MOOT** Huntington Alloy Corporation's various motions in limine.

I.
FACTS

Plaintiff Mr. Jones was an employee of Third-Party Defendant Huntington Alloys Company (Huntington Alloys), when he was seriously injured at work by an impeller blade that broke off a stack fan manufactured by Defendant/Third-Party Plaintiff Heil Process Equipment, LLC (Heil). Mr. Jones received a permanent total disability award through West Virginia's workers' compensation system. On September 11, 2013, Plaintiffs filed a product liability action against Heil. Although Plaintiffs did not bring an action against Huntington Alloys, Heil filed a Third-Party Complaint against Huntington Alloys for contribution, indemnity, and contribution by way of deliberate intent.[1]

The parties proceeded with discovery and a trial date was set for September 15, 2015. On July 2, 2015, Huntington Alloys filed a motion for summary judgment against Heil. The motion became ripe on July 29, 2015. On August 11, 2015, Plaintiffs filed a Motion for Leave to Amend Complaint to name Robert M. Hahn as a Defendant. Plaintiffs allege Mr. Hahn was the sole owner, sole member, general manager, and president of the Heil Process Equipment, LLC, and on July 16, 2015, Plaintiffs received a letter from an attorney working for Mr. Hahn stating that Mr. Hahn was contemplating a lawful "wind-down" of the company, but he would like to engage in settlement discussions. ECF No. 150-4. The day after the letter was written, and unbeknownst to this Court and apparently counsel for Plaintiffs, Heil converted its status under Ohio law from a limited liability company to a corporation.[2] ECF No. 150-5. On July 22, 2015,

---

[1] The Third-Party Complaint also named Special Metals Corporation as a Third-Party Defendant. On May 15, 2015, Special Metals Corporation was voluntarily dismissed.

[2] Plaintiffs state they only learned of this change from a search on the Ohio Secretary of

Plaintiffs received another letter from Mr. Hahn's counsel stating the company would be dissolved unless Plaintiffs agreed to a proposed settlement. ECF No. 150-6.  The action did not settle, and Plaintiffs filed their motion to amend the Complaint alleging that Heil Process Equipment Corporation is a successor corporation and responsible for all liabilities of its predecessor.  In addition, Plaintiffs argue they should be permitted to pierce the corporate veil and name Mr. Hahn as a Defendant because he is the sole shareholder of the company and separate personalities and interests between the company and Mr. Hahn do not exist.

Heil responded that it stipulates to the substitution of Heil Process Equipment Corporation for Heil Process Equipment, LLC, but it opposes the addition of Mr. Hahn because the motion is untimely and there is no evidence to support a theory of piercing the corporate veil. Thereafter, on August 13, 2015, Plaintiffs filed a Status Report advising the Court that Heil's counsel informed them that the company voluntarily dissolved under Ohio law on August 7, 2015. In addition, Heil filed a motion for stay of this action and/or a protective order in the Court of Common Pleas, Lorain County, Ohio.

In response to these developments, Plaintiffs filed a Motion to Expedite Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 155), and a Motion for Emergency Preliminary Injunctive Relief enjoining Heil from proceeding with its dissolution in Ohio. ECF No. 164.  The Court denied the motion for a preliminary injunction and directed the parties to file supplemental briefing. ECF No. 165.

---

State's website. *Pls' Reply to Def.'s Resp. in Opp. to Pls' Mot. for Leave to Am.*, ECF No. 152 at 3.

On August 31, 2015, the Court held a pretrial conference and heard arguments on the pending motions. At that conference, the Court learned that the Lorain Court of Common Pleas issued an Order purporting to stay this action under Ohio law and requiring Plaintiffs to pursue their claims in Ohio as part of the corporate dissolution process. As a result, the Court directed the parties to provide additional briefing on what authority, if any, an Ohio state court has to stay this action. The Court further suspended the trial date pending resolution of the issues.

## II.
## STAY

Upon review of the parties briefing on the stay issue, the Court finds that it is very clear that a state court may not deprive this Court of its jurisdiction over an action. As the Fourth Circuit Court of Appeals stated in *Gross v. Weingarten*, 217 F.3d 208 (4th Cir. 2000), "[t]he Supreme Court has repeatedly and unequivocally rejected the deputy receiver's contention that a state may oust the federal courts of jurisdiction by creating an exclusive forum for claims against an estate." 217 F.3d at 221; *see Hess v. Reynolds*, 113 U.S. 73, 77 (1885) ("[N]either the principle of convenience nor the statutes of a state can deprive [the courts of the United States] of jurisdiction to hear and determine a controversy between citizens of different states when such a controversy is distinctly presented, because the judgment may affect the administration or distribution in another forum of the assets of the decedent's estate."). In addition, the Fourth Circuit held that "even if the initial state action is in rem or quasi in rem, there is no bar to jurisdiction in federal court in a case 'based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court.'" *Id.* (quoting *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939)). Therefore, given these very clear directives from both the Fourth Circuit and the Supreme Court, this Court **DENIES** Heil's request that this action be stayed.

## III.
## MOTION TO AMEND

The next issue the Court must resolve is Plaintiffs' Motion to Amend to add Mr. Hahn as a Defendant. Rule 15(a)(2) of the Federal Rules of Civil Procedure permits amendment of a complaint after a responsive pleading has been filed with the opposing party's written consent or the court's leave and leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Heil opposes the amendment on timeliness grounds, the claims against Mr. Hahn relate to his decision to convert the limited liability company to a corporation, and then have that corporation dissolve. Plaintiffs assert in paragraph 8 of the Proposed Amended Complaint that Mr. Hahn "exercised such control over Heil . . . that the company had no separate mind, will, or existence of its own;" he "exercised control over the company in such a manner as to commit fraud, an illegal act, or a similarly unlawful act;" and . . . "Plaintiffs' injuries or unjust losses hereinafter described resulted from . . . [his] control and wrong." *Prop. Am. Compl*. at ¶8, in part, ECF No. 166-1. In addition, Plaintiffs claim that allowing Mr. Hahn to escape personal liability would result in fraud, injustice and inequity. *Id*. Thus, given the nature of the claims, the Court finds the motion is not untimely because the conversion and dissolution did not occur until July and August of this year. As soon as Plaintiffs learned of the actions, they immediately took action to amend their Complaint, and there simply is no reason for this Court to deny the motion on timeliness grounds.

Heil further argues that the motion should be denied because this Court does not have personal jurisdiction over Mr. Hahn, issues would arise as to whether West Virginia or Ohio law applies, and the Proposed Amended Complaint would be subject to a motion to dismiss. The Court finds these arguments are premature. Once the Amended Complaint is filed, it will be

Plaintiffs' responsibility to ensure that Mr. Hahn is properly served. Once he is served, he may file a motion to dismiss if he so chooses. However, the Court is not inclined to deny Plaintiffs' motion to amend based upon arguments Mr. Hahn may make after the Amended Complaint is filed. Therefore, finding no reason to deny the motion, the Court **GRANTS** Plaintiffs' Motion to Amend and **DIRECTS** the Clerk to file the Proposed Amended Complaint attached as Exhibit 1 to document number 166.

## IV.
## SUMMARY JUDGMENT

Finally, Third-Party Defendant Huntington Alloys moves for summary judgment on Heil's claims against it. To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a

mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

In its Third-Party Complaint, Heil alleges that Huntington Alloys is liable to it for Plaintiffs' claims based upon theories of contribution, indemnity, and contribution by way of deliberate intent. For Heil to recover from Huntington Alloys, Heil must show that Huntington Alloys acted with deliberate intent and, thereby, is not immune from suit under West Virginia's workers' compensation statute. *See* West Virginia Code § 23-4-2(d)(2) (providing that an employer's immunity from suit may be lost only if the employer acted with deliberate intent). To prove deliberate intent, Heil must show that the Huntington Alloys "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee" or by establishing the following factors:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the

>employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

>(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(i) and (ii) (2005).[3]

In considering the evidence in the light most favorable to Heil, the Court finds that Heil has failed to produce sufficient evidence from which a reasonable juror could return a verdict in its favor. Specifically, Heil has offered no evidence that Huntington Alloys had actual knowledge, or could have anticipated, that an impeller blade would break off the fan, punch through the fan housing, and strike an employee. Indeed, Mr. Hahn testified he had never heard of an impeller blade breaking off an axial fan, and he believed it was the first time it had ever happened. *Dep. of Robert M. Hahn*, at 116, ECF No. 130-9, at 5. In addition, Mr. Hahn stated during his deposition that there was no way to predict a blade would break off or predict it would exit the housing. *Id*. at 214, ECF No. 130-9, at 18. Although Mr. Hahn stated the fan housing was "not designed to be a scatter shield," nor was it tested to determine if it would contain a broken impeller blade, there were no specific warnings given to costumers. *Id*. at 118-19, ECF No. 130-9, at 7-8. The only warning provided was very general and said that "fan failure can impose death or risk of serious bodily injury[.]" *Id*. at 120, ECF No. 130-9, at 9. This generic statement clearly is insufficient to alert Huntington Alloys of the events that occurred in this case.

---

[3]This section was amended in 2015.

It also is undisputed that, when the impeller blade broke off, punched through the housing, and struck Mr. Jones, it happened very suddenly, with no time for Mr. Jones to react or avoid injury. Neither Mr. Jones, nor his co-workers, had time to appreciate an unsafe condition or risk existed with the fan. In fact, no Huntington Alloys' employee had ever made a safety complaint about an impeller blade breaking and going through the housing. Even John Correll, a long-time consultant for Heil, was unaware of a similar event occurring in the past. *Dep. of John David Correll*, at 87-88, ECF No. 130-10, at 6.

Although Heil seeks to attach liability by virtue of what it characterizes as poor maintenance practices and willful ignorance of hazards,[4] it does not demonstrate the actual knowledge required to show deliberate intent. It is true that there were broken impeller blades in the pit below where the fans were located and some damages to the housing where blades would hit it. Employees also made repairs to the housing over the years.[5] *Dep. of Robert Stacy Adkins*, at 29-31, ECF No. 142-12. In addition, there is some evidence that the impeller blade at issue may have had some preexisting damage. *See Dep. of Duane Priddy*, at 84, ECF No. 142-6 at 8. Nevertheless, despite what Heil states was decades of poor maintenance and a number of broken impeller blades, during that entire period of time, there is no evidence that an impeller blade ever broke off and went through the housing. What Heil describes may constitute negligence on the part of Huntington Alloys, but it is not evidence sufficient to prove Huntington Alloys "acted with

---

[4] Huntington Alloys denies these allegations.

[5] Heil also points to evidence that Huntington Alloys used impellers from other manufacturers, which it claims highlights improper maintenance. However, it is not disputed that it was a impeller blade from Heil that broke off and stuck Mr. Jones.

a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee" or it "had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." W. Va. Code § 23-4-2(d)(2)(i) and (ii)(B); *see also Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385, 393 (W. Va. 1991) (stating deliberate intent cannot be "satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong possibility of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge."). Heil simply has not presented sufficient evidence for a reasonable juror to find that it has overcome the protection afforded to an employer under West Virginia's workers' compensation statute. Therefore, the Court **GRANTS** summary judgment in favor of Huntington Alloys. As the Court has granted summary judgment in favor of Huntington Alloys, the Court further **DENIES AS MOOT** the various motions in limine filed by Huntington Alloys. ECF Nos. 171, 174, 176, and 178.

## V.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant/Third-Party Plaintiff Heil Process Equipment, LLC's Brief Supporting a Stay of this Action (ECF No. 186); **GRANTS** Plaintiffs William R. and Tiffany Jones' Motion for Leave to Amend Complaint (ECF No. 150); **DENIES AS MOOT** Plaintiffs' Motion to Expedite Motion for Leave to Amend Complaint (ECF No. 155); **GRANTS** Third-Party Defendant Huntington Alloys Corporation's Motion for Summary Judgment (ECF No. 130); and **DENIES AS MOOT** Huntington Alloy Corporation's various motions in limine .ECF Nos. 171, 174, 176, & 178.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:      October 16, 2015

        ROBERT C. CHAMBERS, CHIEF JUDGE