IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM R. JONES,
and TIFFANY JONES,
                Plaintiffs,

v.                                                    CIVIL ACTION NO.  3:13-22811

HEIL PROCESS EQUIPMENT CORPORATION
and ROBERT M. HAHN,
                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is a Motion to Dismiss Plaintiffs' Amended Complaint as to Claims Asserted Against Robert Hahn. ECF No. 206. On October 16, 2015, the Court permitted Plaintiffs William R. and Tiffany Jones to amend their Complaint to add Mr. Hahn as a Defendant. ECF No. 195. However, the Court expressly found that any decision on whether this Court has personal jurisdiction over Defendant Hahn was premature. After the Amended Complaint was filed, Defendant Hahn filed the pending motion. The Court held a hearing on the motion on June 20, 2016. Upon review, the Court **GRANTS** Defendant Hahn's Motion to Dismiss.

In his motion, Defendant Hahn asserts that this Court should dismiss this action against him pursuant to Rule 12(b)(2), (4), (5), and (6) of the Federal Rules of Civil Procedure. In resolving this motion, the Court recognizes that it is undisputed that Defendant Hahn is not a resident of West Virginia. The parties disagree, however, over whether Defendant Hahn has maintained sufficient contacts with West Virginia in order for this Court to assert jurisdiction over him or whether jurisdiction can be established under a doctrine of piercing the corporate veil.

In considering "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). In determining whether a prima facie case is established, a "court 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Two conditions must be met before a federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant. First, it must be authorized under the state's long-arm statute. Second, it must comport with the due process standards in the Fourteenth Amendment. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Fourth Circuit has interpreted West Virginia's long-arm statute as coextensive with the Due Process Clause. *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997). Therefore, the two conditions collapse into a single inquiry as to whether personal jurisdiction exists in West Virginia, that is: whether a defendant has sufficient "minimum contacts with [West Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A court may exercise general or specific personal jurisdiction. General personal jurisdiction exists when there is "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984). Specific jurisdiction exists when a defendant has "purposefully established minimum contacts in the forum

State" such "that [it] should reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted). In this case, Plaintiffs do not argue in their Response that Defendant Hahn is subject to general jurisdiction by virtue of "continuous and systematic" contacts. Instead, they insist that specific jurisdiction exists.[1]

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted). A court must "do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, 'a single act by a defendant can be sufficient to satisfy the necessary "quality and nature" of such minimal contacts, although "casual" or "isolated" contacts are insufficient to trigger' an obligation to litigate in the forum." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (per curiam) (citations omitted).

To determine whether specific jurisdiction lies in the forum state, the Fourth Circuit has adopted a three-party inquiry: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would

---

[1] Although Plaintiffs state in their Response that they are not arguing that Defendant "Hahn had systematic and continuous contacts with the State of West Virginia," *Pls.' Resp. in Opp. to Def., Robert M. Hahn's, Mot. to Dis.,* at 6, Plaintiffs' counsel suggested at the hearing that general jurisdiction over Defendant Hahn does exist. The Court rejects this argument as there is no evidence Defendant Hahn had systematic and continuous contacts in West Virginia.

be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks and citations omitted). The plaintiff must prevail on all three prongs of this test in order to show that specific jurisdiction exists. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278-79 (4th Cir. 2009).

Further analyzing each of these prongs, the Fourth Circuit has explained that "[t]he first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Id*. Some factors the Fourth Circuit outlined that courts may consider, but are not limited to, include:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Universal Leather, LLC,* 773 F.3d at 560 (quoting *Consulting Eng'rs*, 561 F.3d at 278). As purposeful availment is a flexible test, the court must apply these factors, and any other considerations, on a case-by-case analysis. *Tire Eng'g & Distrib.*, 682 F.3d at 302.

Assuming a plaintiff can satisfy the first prong, a plaintiff then must show "that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79 (citations omitted). Typically, a prong-two analysis is uncomplicated. *Tire Eng'g &*

*Distrib.*, 682 F.3d at 303. This prong is easily met when the dispute originates in the forum. *Id.* (citation omitted). Similarly, a plaintiff can satisfy this prong when the claims "arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* (citation omitted).

If the second prong is met, the court then proceeds to the third prong and considers other "factors to ensure the appropriateness of the forum[.]" *Consulting Eng'rs*, 561 F.3d at 279. These factors include such things as: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.* (citations omitted). The constitutional reasonableness of exercising personal jurisdiction over a nonresident defendant "ensures that litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (citations omitted).

In applying these factors to the present case, the Court finds that specific jurisdiction over Defendant Hahn does not exist. Defendant Hahn submitted an uncontested Affidavit (ECF No. 206-1), in which he states, inter alia, that he has never personally transacted business in West Virginia; never personally supplied services or things here; never personally solicited, conducted, or engaged in business here; has not property interests here; and has nothing insured in West Virginia. Defendant Hahn's very limited contact with West Virginia was at the

request of Plaintiff William R. Jones' employer for business purposes. There is no evidence Defendant Hahn ever came to West Virginia as anything other than an employee or agent of Heil or its predecessor in interest. Accordingly, the Court finds that Plaintiffs have failed to make a prima facie showing of the minimum contacts necessary for this Court to exercise specific jurisdiction over Defendant Hahn.

In addition to these factors, the Court in this case also must resolve whether Plaintiffs may proceed against Defendant Hahn under a piercing the corporate theory. In the Amended Complaint, Plaintiffs assert Defendant Hahn was "the sole member and owner of Defendant, Heil Process Equipment, LLC and the sole shareholder and owner of its predecessor, Heil Process Equipment Corporation. [In addition,] [a]t all times relevant to the Complaint, [Defendant] Hahn, was general manager of Heil Process Equipment, LLC." *Am. Compl.*, at ¶1(d). Plaintiffs further allege that:

> At all relevant times, (1) Robert M. Hahn exercised such control over Heil Process Equipment, LLC that the company had no separate mind, will, or existence of its own; (2) Robert M. Hahn exercised control over the company in such a manner as to commit fraud, an illegal act, or a similarly unlawful act; and (3) Plaintiffs' injuries or unjust losses hereinafter described resulted from Robert M. Hahn's control and wrong. Fraud, injustice and an inequitable result would occur if Mr. Hahn is not held personally liable for his acts and omissions and the acts and omissions of Heil Process Equipment, LLC.

*Id*. at ¶8. On this issue, the Fourth Circuit stated in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) that:

> "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the individual . . .

is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court."

*Id.* at 433 (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 n. 18 (5th Cir.2002) (collecting cases) (other citations omitted). The Court then must look to a state's substantive law to determine whether the corporate veil may be pierced. However, the parties in this action disagree about what state law applies. Plaintiffs assert that Ohio law applies, and Defendant Hahn argues that West Virginia law applies.

In *Mountain Link Assoc. v. Chesapeake Energy Corp.*, 2:13-cv-16860, 2014 WL 4851993 (S.D. W. Va. Sept. 29, 2014), the Court explained that some jurisdictions apply "the internal affairs doctrine to impose the law of the state of incorporation upon piercing claims, while others have conducted a general choice-of-law analysis." *Id*. at *6 (citing *Choice of Law in Veil-Piercing Litigation: Why Court Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. ANN. SURV. AM. L. 85, 90 & n. 13-14 (2008)); *see also* ¶5.02 LLC STATUTES, 1998 WL 1169385, 11 n.17 (stating "it can be argued that the liability of members and managers to third parties is not an internal affair. A few cases subsume owner/manager liability into internal affairs, but many do not." (citations omitted)).[2] Finding no

---

[2] The internal affairs doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, Comment b, pp. 307–08 (1971)). The internal affairs doctrine provides that "[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 302(2). Thus, it is presumed that the law of the state of incorporation will control, unless rebutted by other factors, such as a "showing that another state bears a more significant relationship to parties and their claims." *Swart v. Pawar*, No. 1:14CV10, 2015 WL 7430795, at *11 (N.D. W. Va. Nov. 19, 2015) (citing F.D.I.C. v. Baldini, 983 F.Supp.2d

cases in West Virginia identifying the applicable rule in situations involving piercing the corporate veil, the Court in *Mountain Link* explained that, if West Virginia's general choice-of-law rules apply, the analytical framework is guided by § 6 of the Restatement (Second) of Conflict of Laws (Second Restatement). This section "identifies several factors for a court to consider in determining which forum's law it is appropriate to apply in the absence of a statutory directive." *Id*. (footnote omitted).[3] In addition, § 307 of the Second Restatement sets forth a more specific doctrine that provides "'[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts.'" *Id*. (quoting § 307 Second Restatement; other citations omitted).

---

772 (S.D. W. Va. July 14, 2013)).

[3]This section specifically provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Assuming that West Virginia's choice-of-law analysis applies to a claim to pierce the corporate veil of a nonresident defendant, the Court points to the language in § 6(1) of the Restatement that provides a court should follow statutory directives when available. Here, West Virginia Code § 31B-10-1001 expressly provides: "The laws of the state or other jurisdiction under which *a foreign limited liability company* is organized govern its organization and internal affairs and the liability of its managers, members and their transferees." W. Va. Code § 31B-10-1001(a) (italics added). Thus, to the extent Plaintiff's claim involves piercing the corporate veil of Heil Process Equipment, LLC, which manufactured, marketed and sold the fan at issue, there is a specific statutory provision mandating that the Court should apply Ohio law in this case because Heil Process, LLC was organized in Ohio.

On July 17, 2015, however, Heil Process Equipment, LLC converted its status to Heil Process Equipment Corporation. Plaintiffs assert the Corporation is a mere continuation and reincarnation of the limited liability company, and its sole shareholder and owner is Defendant Hahn. Defendant Hahn assets that the limited liability company was converted to a corporation as part of the dissolution and wind down process of the business, consistent with R.C. § 1705.371.[4] Given this conversion from a limited liability company to a corporation, the Court finds that § 31B-10-1001 is inapplicable to determining what state's law applies to piercing the veil of Heil Process Equipment Corporation. The Court also has not found any similar statute to § 31B-10-1001 in

---

[4]Section 1705.371(A) of Ohio's Revised Code provides: "(A) Subject to division (B)(2) of this section, pursuant to a written declaration of conversion as provided in this section, a domestic limited liability company may be converted into a domestic or foreign entity other than a domestic limited liability company. The conversion also must be permitted by the chapter of the Revised Code or by the laws under which the converted entity will exist." R.C. § 1705.371(A).

West Virginia providing that the state of incorporation of a foreign corporation governs the liability of its shareholders.

Although this Court has not found any conflict of law cases by the West Virginia Supreme Court addressing veil-piercing to reach a shareholder, the court has turned to the Restatement Second in a comparable situation. In *West Virginia ex rel. Elish v. Wilson*, 434 S.E.2d 411 (1993), the West Virginia Supreme Court followed the Restatement Second and quoted §§ 302[5] and 303[6] in holding that "[t]he local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit." 434 S.E.2d at 417-18. The West Virginia

---

[5]Section 302 provides:

> (1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Law § 302.

[6]Section 303 states:

> The local law of the state of incorporation will be applied to determine who are shareholders of a corporation except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the person involved and the corporation, in which event the local law of the other state will be applied.

Restatement of Conflict of Law § 303.

Supreme Court reasoned that "to apply the law of the state of incorporation reflects the importance of applying choice of law principles—'certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied.'" *Id*. at 417. The court further explained that "[t]he only way West Virginia can expect fair and equal treatment from our fellow states is if we play by the rules." *Id.* (footnote omitted). Finding no sufficient reason why West Virginia would have a more significant relationship in a derivative suit than Delaware, which was where the corporation was formed, the West Virginia Supreme Court said it would "comply with the choice of law principles and apply the law of the state of incorporation[.]" *Id*.

Applying these principles to the present case, the Court reaches the same result. As previously stated, § 307 provides that the state of incorporation will control shareholder liability. When faced with veil-piercing claims, the district court in *Tomlinson v. Combined Underwriters Life Insurance Co.*, No. 08-CV-259-TCK-(FHM), 2009 WL 2601940 (N.D. Ok. Aug. 21, 2009), found that many jurisdictions cite § 307, and the majority of jurisdictions addressing these claims have applied the law of the state of incorporation. 2009 WL 2601940, at *2 (collecting cases). Here, the Court is not persuaded that West Virginia has such a significant interest in piercing the corporate veil of a foreign corporation under West Virginia law that the important principles outlined in *Elish* should be set aside.[7] Thus, under a choice-of-law analysis, the Court finds that Ohio law applies.

---

[7]In addition, allowing West Virginia law to control would create a disparate situation in which Heil Process Equipment, LLC would be subject to Ohio law, but Heil Process Corporation would be subject to West Virginia law merely because of the conversion during the dissolution

-11-

Likewise, if this Court were to apply the internal affairs doctrine, rather than general choice-of-law principles, Ohio law also applies. This case is not so unusual that West Virginia's interest in the matter is sufficient to rebut the presumption that Ohio law applies. *See Swart v. Pawar*, No. 1:14CV10, 2015 WL 7430795, at *11-12 (N.D. W. Va. Nov. 19, 2015) (applying the internal affairs doctrine's directive that the law of the state of incorporation is presumed to control, but recognizing the Fourth Circuit has rejected blind adherence to the presumption, which can be rebutted in unusual situations where another state has a more significant relationship to the event and the parties). Thus, the Court finds that under either a choice-of-law analysis or the internal affairs doctrine, Ohio law controls the piercing the corporate veil issue raised in this case.

Under Ohio law, piercing the corporate veil is not an independent cause of action. Rather, "it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual." *RCO Int'l. Corp. v. Clevenger*, 904 N.E.2d 941, ¶ 11 (Ohio Ct. App. 10th Dist. 2008) (citations omitted). In the seminal case of *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993), the Ohio Supreme Court explained that shareholders are not normally liable for the debts of a corporation, but shareholders are not completely immune from liability. *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993) (citation omitted). To determine under what circumstances a shareholder may be held liable, the *Belvedere* court established a three-prong test. Under the test, a shareholder may be held liable when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an

process in Ohio.

> illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

Belvedere, 617 N.E.2d at 1086. All three prongs of the test must be met before the corporate veil can be pierced.

In the years following *Belvedere*, however, disputes arose about the parameters of the second prong of the test. In *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538 (Ohio 2008), the Ohio Supreme Court addressed the issue and found the second prong was too narrow because it could allow shareholders to insulate themselves from liability if they commit acts that are not fraudulent or illegal, but are just as objectionable or egregious as those acts. 895 N.E.2d at 545. Therefore, the court expanded the second prong to provide that a "plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id*. The court expressly declined, however, to expand the second prong to include merely unjust or inequitable conduct. *Id.* The Court emphasized that piercing a corporate veil is a "rare exception" and "[c]ourts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Id*. at 544-45 (internal quotation marks and citations omitted).

In *Orrand v. Kin Contractors, LLC*, No. 2:09 CV 1129, 2011 WL 1238301 (S.D. Ohio Mar. 30, 2011), the district court explained that each of the *Belvedere* prongs must be sufficiently well-pleaded to demonstrate "that the pleader is entitled to relief under Rule 8(a)(2). The corporate veil will not be pierced—and [a shareholder] held personally liable as a defendant for those debts incurred prior to dissolution—unless Plaintiffs establish all three prongs set out in *Belvedere, Dombroski,* 895 N.E.2d at 543." 2011 WL 1238301, at *4.

Plaintiffs contend, however, that they merely must cite the elements of piercing the corporate veil in their Complaint in order to survive a motion to dismiss. In support, they cite *Kurtz Bros., Inc. v. Ace Demo, Inc.*, 24 N.E.3d 649 (Ohio Ct. App. 11th Dist. 2014), in which the court stated: "A complaint seeking to pierce the corporate veil, which recites the elements of the *Belvedere–Dombroski* test, is sufficient to carry the plaintiff's pleading burden for purposes of a motion to dismiss." *Kurtz*, No. 24 N.E.3d at 654 (citations omitted). However, the Court finds that this quote must be considered in the context of the case. After making this statement, the court in *Kurtz* proceeded to explain how the plaintiff alleged facts to support each prong of the *Belvedere-Dombroski* test, including a specific allegation supporting a criminal offense. After discussing the particular facts alleged, the court reversed the trial court and found that the plaintiff had properly pled its veil-piercing claim. *Id.* at 655.

To the contrary, in the present case, Plaintiffs make threadbare and conclusory statements in their Amended Complaint that Defendant Hahn violated each prong of the *Belvedere-Dombroski* test. Plaintiffs allege no facts in the Amended Complaint to support these statements, and Plaintiffs were unable to articulate any facts at the hearing. Clearly, Plaintiffs' allegations fall well short of the *Iqbal* and *Twombly* plausibility standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Without anything more than a basic recitation of the elements, the Court finds Plaintiffs' claim of piercing the corporate veil cannot survive.

-15-

Accordingly, finding no general or specific jurisdiction exists over Defendant Hahn, and Plaintiffs have failed to allege a plausible piercing the corporate veil claim, the Court **GRANTS** the Motion to Dismiss Plaintiffs' Amended Complaint as to Claims Asserted Against Robert Hahn. ECF No. 206. Therefore, the Court **DISMISSES** Robert Hahn from this action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 27, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE